UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ABRAHAM HUGHES,

      Plaintiff,

Case No.

-vs-

LISA NOCERINI, individually and
in her official capacity, JOHN RHAESA,
individually and in his official capacity,
ALYSE LESLIE, individually and in her
official capacity, CITY OF WAYNE, a
Michigan municipal corporation, and
WAYNE CITY COUNCIL, a subdivision
of CITY OF WAYNE,

      Defendants.

---

JOHN M. PETERS (P32118)
Attorney for Plaintiff
1844 Blue Grass Drive
Rochester Hills, MI 48306
(248) 601-0201
jmp@peterslaw.com

---

*There are no pending or resolved actions between these parties
arising out of the transactions or occurrences giving rise to this matter.*

**COMPLAINT AND JURY DEMAND**

    Plaintiff, Abraham Hughes, through his attorney, John M. Peters, submits the following complaint against the Defendants:

**PARTIES / JURISDICTION / VENUE**

    1.    Plaintiff, Abraham Hughes, is a resident of the City of Westland in the County of Wayne, within the Eastern District of the State of Michigan.

2. Defendant, Lisa Nocerini (hereinafter: Nocerini), is an individual who is employed and works as the City Manager for the City of Wayne, in the County of Wayne within the Eastern District of the State of Michigan.

3. Defendant, John Rhaesa (hereinafter: Rhaesa), is an individual who is employed and works as the Mayor of the City of Wayne, in the County of Wayne within the Eastern District of Michigan.

4. Defendant, Alyse Leslie (hereinafter: Leslie), is an individual who is employed and works as the Director of Personnel for the City of Wayne in the County of Wayne, within the Eastern District of Michigan.

5. Defendant, City of Wayne, is a municipal corporation located in the County of Wayne within the Eastern District of Michigan.

6. Defendant, Wayne City Council, is a subdivision of the City of Wayne, and is located and operates within the County of Wayne, within the Eastern District of Michigan.

7. This Court has subject matter jurisdiction over this case pursuant to 28 USC § 1331, based upon the federal question raised under 42 USC § 1983.

8. The amount in controversy exceeds seventy-five thousand ($75,000.00) dollars, exclusive of interest, costs and attorney fees.

**FACTUAL BACKGROUND TO CLAIMS**

9. Abraham Hughes has served as a police officer for the City of Wayne since February 2002, and obtained his current rank of Sergeant in 2016.

10. Sometime in calendar year 2018, Sergeant Hughes was given verbal notice of then current Chief Maciag's intent to retire as Chief of the Wayne Police Department.

11. In early December 2018, the Wayne Police Command Officers Association received verbal notice of Chief Maciag's possible replacement with an individual from outside the Wayne Police Department.

12. On December 17, 2018, Sergeant Hughes met with Nocerini, Leslie, Lieutenant Carter, Rhaesa. Sergeant Hughes urged the City of Wayne to promote to the Chief's position from current Wayne Police Officers.

13. Following this meeting, a private meeting was held among Sergeant Hughes, Rhaesa and Nocerini. Rhaesa and Nocerini expressed their extreme dissatisfaction with Former Chief Maciag and Acting Chief Strong whom Nocerini stated would not become the next Chief of Police despite a written recommendation from former Chief Maciag. Nocerini informed Sergeant Hughes that she had torn up and thrown the recommendation in the trash prior to her meeting with Sergeant Hughes.

14. Nocerini made it clear to Hughes that her dissatisfaction with Maciag and Strong was based upon their referrals of investigations to the Michigan State Police of incidents involving Wayne citizens and Wayne City employees, which Nocerini wanted kept within Wayne City government.

15. On December 19, 2018, the opening for the Chief's position was posted internally. The qualification process was listed as (i) a verbal interview, (ii) a four-year degree and (iii) testing to be conducted with EMPCO. However, it was explained by City personnel that the candidate need only be actively pursuing their four-year degree, with actual completion of the degree not being a requirement.

16. On January 8, 2019, Sergeant Hughes, Acting Chief Strong and Sergeant Springer submitted notice of their application for the Chief's position. Sergeant Springer

withdrew his application on January 8, 2019. Neither Acting Chief Strong nor Sergeant Hughes was ever interviewed.

17. On February 13, 2019, a warrant for the arrest of Mark Blackwell was submitted by the Wayne Police Department to the Wayne County not-in-custody warrants division.

18. The warrant request was the result of personal intervention by Acting Chief Strong on behalf of a complaint by Nocerini. Nocerini had been a frequent target of citizen Mark Blackwell's protected speech, criticizing her job performance. Others, including Chief Maciag, had refused Nocerini's request to prosecute Mr. Blackwell for harassing her.

19. February 20, 2019, with the interview waived, the candidates were invited to attend an orientation with EMPCO at Wayne City Hall.

20. On February 26, 2019, at 10:00 a.m., the candidates met with EMPCO, where they were informed that the sole qualification for the open Chief of Police position would be the objective results – score and score only – of the EMPCO testing process.

21. On March 6, 2019, the Assistant Wayne County Prosecutor assigned to the 29th District Court signed the complaint, after it had sat at the Wayne Prosecutor's Office for three weeks without any action being taken on it. This was an unusual step since such a complaint would normally be signed or denied by someone at the Wayne County Prosecutor's Office in Detroit.

22. On March 7, 2019, the EMPCO process was completed with EMPCO at Wayne City Hall.

23. On March 11, 2019, the 29th District Court received the signed complaint against Mark Blackwell.

24. On March 12, 2019, Mark Blackwell received the courtesy of a telephone call from the Wayne Police Department advising him of the warrant. On that same date, he appeared for booking at the Wayne Police Department and was arraigned at the 29th District Court.

25. On March 13, 2019, Sergeant Hughes was contacted by Nocerini, who requested to meet with Sergeant Hughes and Leslie to discuss the results of the EMPCO testing.

26. Nocerini informed Sergeant Hughes that he had received an '87' score from EMPCO and that Acting Chief Strong has received a '90.' Nocerini informed Sergeant Hughes that she intended to fill the vacant Chief's position with Acting Chief, Strong.

27. Nocerini also mentioned an upcoming Lieutenant's promotion due to the promotion of Acting Chief Strong. Sergeant Hughes informed Nocerini that he was not eligible for the position because he was approximately three months short of time as a Sergeant in the Command Officers Association.

28. When Sergeant Hughes asked Nocerini why there had been no interview as originally stated, he was told that she had been conducting an interview for the last three months.

29. Sergeant Hughes did not interact with Nocerini on any regular basis in that three-month period while Acting Chief Strong did.

5

30. On or about March 14, 2019, Sergeant Hughes was informed by a third-party that one of the assessors who conducted the EMPCO testing confirmed that Hughes had received the higher score of the two candidates tested.

31. On April 3, 2019, Sergeant Hughes' met with Chuck Castle at the EMPCO office in Troy, Michigan. At this meeting, Castle informed Sergeant Hughes that after the EMPCO orientation had been completed but before the testing had been completed Nocerini contacted EMPCO to change the scoring requirements to include the relative strengths and weaknesses of each candidate.

32. In June 2020, Sergeant Hughes applied for a Lieutenant's position along with Sergeant Strasser, Sergeant Amore and Sergeant Springer. Sergeant Springer was ultimately given the Lieutenant's position.

33. On December 22, 2020, Sergeant Hughes again met with Mr. Castle by Zoom, during which meeting, Mr. Castle confirmed to Sergeant Hughes that (i) Sergeant Hughes had scored the highest in the EMPCO testing process, (ii) EMPCO reported those results to Nocerini within 2-3 days of the testing, (iii) EMPCO compiled its test results solely from the process conducted with EMPCO on March 7, 2019, and (iv) Nocerini had intervened in the normal EMPCO testing process to try to change the criteria used in scoring.

34. On January 14, 2021, Sergeant Hughes met privately with Chief Strong to voice his concern over the integrity of the selection process for the Chief's position and his concern that the City arbitrarily and secretly added subjective elements to the process while EMPCO was in the process of completing it.

35. During that meeting, Sergeant Hughes asked Chief Strong if he (Strong) remembered what EMPCO said they were going to provide to the City of Wayne. Chief Strong replied that he was clear that it was going to be a score-and-score-only evaluation, but that they did not follow through. He confirmed to Sergeant Hughes that they were only supposed to provide a numerical score, but that someone added plusses and minuses, and Strong's knowledge of that fact bothered him so much that he went to talk with Chuck Castle at EMPCO about it that day.

36. In February 2021, Chief Strong called Sergeant Hughes into his office to inform him that the City of Wayne would be conducting an investigation of improprieties surrounding the Chief selection process.

37. On March 12, 2021, the attorney for the City of Wayne, Anthony Chubb, contacted Sergeant Hughes to inform him of a pending investigation being conducted by himself and Leslie.

38. Sergeant Hughes was informed that his failure to participate in the so-called investigation could lead to disciplinary action being taken against him, up to and including termination.

39. Sergeant Hughes appeared with his Union Representative, Ken Grabowski, and protested Mr. Chubb's and Leslie's complete conflict of interest in attempting to conduct an investigation of the City Manager, at whose discretion both were employed and whom both reported to.

40. On April 5, 2021, Sergeant Hughes sent Mr. Chubb an email outlining his objections to any investigation being conducted by Mr. Chubb or Leslie due to their glaring

7

conflicts of interest. Sergeant Hughes was ultimately notified that the investigation was conducted over his objections.

41. On April 15, 2021, City Council was notified that the investigation was being conducted.

42. On April 21, 2021, Sergeant Hughes was notified that the investigation determined no wrongdoing in the process for the selection of Chief.

### COUNT I – 42 USC § 1983 MONELL CLAIM (CITY OF WAYNE)

43. Plaintiff realleges and incorporates by reference, Paragraphs 1 through 42, and further alleges:

44. Nocerini, has a reputation of using nepotism, personal favoritism, intimidation and retaliation in conducting City of Wayne business.

45. This pattern of improper behavior in her official position has been known to other officials at the City of Wayne, including Rhaesa, Leslie and Wayne City Council, for years.

46. In 2018, the complaints surrounding Nocerini and other City officials led to a full investigation (the Investigation) conducted by a third-party professional who documented the pervasive culture of mistrust, spying, favoritism, nepotism, intimidation retaliatory conduct and other forms of corruption in the conduct of City of Wayne business, primarily by Nocerini.

47. This culture led to a mindset among City of Wayne employees that challenging Nocerini would lead to intolerable retaliation and a belief that nothing would

change in spite of protests or challenges because of the unchecked personal power that Nocerini exercised.[1]

48. This culture was tolerated, acquiesced in or ratified by Rhaesa, Leslie and Wayne City Council to the point that it amounted to a custom, policy or practice within City of Wayne government which encouraged further abuse of power and Nocerini's refusal to reform.

49. *Inter alia*, this custom, policy or practice allowed Nocerini to steer appointments and promotions based upon her personal whims and to refuse to implement or follow objective criteria in the selection of appointments or promotions within the City of Wayne.

50. Each of the above failures in the conduct of City of Wayne business was identified in the Investigation which made specific recommendations for reform and warned of the dangers that would follow if the recommendations were not implemented.

51. The Investigation was made available to Nocerini, Leslie, Wayne City Council (of which Rhaesa was then a member) and others.

52. Wayne City Council is the primary regulatory body for City of Wayne, with authority to ensure reform, proper procedures and the power to remove, if necessary, Nocerini, from her position as City Manager.

53. The policies of City of Wayne government are created and enforced by a Management Team, consisting of the Mayor (Rhaesa), City Manager (Nocerini) and Director of Personnel (Leslie), who are ultimately overseen by Wayne City Council.

---

[1] While employed as City Manager, Nocerini retained private counsel to sue a former City Councilman for acts occurring while he was a City Councilman and vocal critic of Nocerini. City Attorney and Wayne City Council elected not to challenge the claim, instead authorizing a significant monetary settlement to Nocerini.

54.  Despite the findings of the Investigation and the otherwise known corrupt practices, Nocerini, Rhaesa, Leslie, and Wayne City Council have allowed a custom, policy or practice to exist whereby Nocerini's wrongful use of self-serving criteria in decision making is either acquiesced in, approved of, ignored, or ratified by City of Wayne.

55.  One outcome of this custom, policy or practice was Nocerini's and/or Leslie's interference in and corruption of the selection process for the Chief of Police position by allowing her to ignore or circumvent the objective score-and-score-only process conducted by EMPCO of which Plaintiff was the higher scoring of the two candidates for the position.

56.  Nocerini's and/or Leslie's ability to circumvent the score-and-score-only testing outcome of a procedure established by the City itself for the selection of Chief, was a direct result of the City of Wayne's custom, policy of practice of leaving Nocerini's exercise of personal favoritism, nepotism and retaliatory conduct unchecked despite warnings of the injurious outcomes of doing so.[2]

57.  This custom, policy or practice by City of Wayne deprived Plaintiff of the position rightfully earned under the process established by the City itself for the selection of Chief, a position which represented a property interest to the Plaintiff with actual monetary and non-monetary benefits.

58.  This interference in the selection process was arbitrary and a deprivation of Plaintiff's property interest without due process in violation of Plaintiff's Fourteenth Amendment right under the United States Constitution as extended to the State, and applicable case law which clearly established the right.

---

[2] Parratt-Hudson Doctrine.

Plaintiff, Abraham Hughes, requests a judgment in his favor and against Defendant, City of Wayne, in whatever amount he is found to be entitled, including punitive damages, in excess of $75,000.00, plus interest, costs and attorney fees.

## COUNT II – 42 USC § 1983
## FAILURE TO TRAIN / FAILURE TO SUPERVISE
## (ALL DEFENDANTS)

59. Plaintiff realleges and incorporates by reference, Paragraphs 1 through 58, and further alleges:

60. Wayne City Council has the authority and legal obligation to supervise, require training of and set policy for the Wayne City Manager, the Wayne Director of Personnel and the Mayor. (Referred to collectively in the Investigation as the Management Team)

61. As a result of the 2018 Investigation, Wayne City Council was placed on notice of the glaring deficiencies that existed within the Management Team.

62. The Investigation made specific findings of failures and specific recommendations for improvements within the processes of training and supervision (goal-setting; the establishment of objective policies; improved channels of communication regarding policies; regular meetings to assure progress on the recommended improvements; creating trust; inviting conflict; use of outside professionals to mediate and help guide the improvements, participation in programs teaching best practices, etc.), to eliminate the subjectiveness, nepotism, retaliation and favoritism that permeated the conduct of City of Wayne business.

63. The recommendations for improvement were deemed urgent and were particularly directed toward the protection of City of Wayne personnel from arbitrary, subjective and personally driven decisions.

64. Despite the urgent recommendations expressly made to Wayne City Council and the Management Team by the Investigation, Nocerini, Leslie, Rhaesa and Wayne City Council ignored and failed to implement the supervision and training recommendations of the Investigation.

65. In failing to follow the recommendations of the Investigation or alternative measures likely to lead to the same improvements, Nocerini, Leslie, Rhaesa and Wayne City Council demonstrated deliberate indifference to the harms which would result, especially to City of Wayne employees.

66. As a result of Nocerini's, Leslie's, Rhaesa's and Wayne City Council's failures to properly train and supervise the Management Team, Plaintiff was deprived of the position he rightfully earned and the benefits associated with that position, by allowing a selection process to persist that was based largely if not exclusively upon the personal whims of Management Team members, in particular, Nocerini.

Plaintiff, Abraham Hughes, requests a judgment in his favor and against all Defendants in whatever amount he is found to be entitled in excess of $75,000.00, plus interest, costs and attorney fees.

## COUNT III – TORTIOUS INTERFERENCE (NOCERINI)

67. Plaintiff realleges and incorporates by reference, Paragraphs 1 through 66, and further alleges:

68. In 2019, Plaintiff had a business relationship with City of Wayne by virtue of his seventeen-year employment with the City of Wayne Police Department, and his position as Vice President of the Command Officers Association, since 2019, and as President of the Command Officers Association since November 2020.

69. Nocerini had personal knowledge of Plaintiff's relationship with the City of Wayne Police Department pre-dating 2019.

70. Plaintiff also had the real prospect of a future business/contractual relationship as Chief of Police for City of Wayne with improved economic benefit to Plaintiff.

71. Nocerini was aware that by virtue of his being one of only two candidates for the Chief of Police position, Plaintiff had a real prospect of becoming the next Chief of Police for City of Wayne.

72. Despite the announcement of a purely objective testing procedure through a third-party testing facility with a score-and-score-only result as the sole determinant of which candidate would become the next Chief of Police for City of Wayne, Nocerini either (i) directed the third-party testing facility to change its established scoring criteria after the testing had been conducted but before the result was reported to City of Wayne or (ii) added subjective criteria determined by her to change the objective test result upon which the promotional process was announced and conducted, after receiving notice that Plaintiff had scored the highest in the third-party testing.

73. Nocerini's interference in the objective testing process, was wrongful per se (interfering personally in an established promotional process) or, if proper, was done for an improper purpose, *i.e.*, to favor or reward Acting Chief Strong to Plaintiff's detriment

despite Plaintiff being the higher scoring candidate for the Chief's position as a reward or *quid pro quo* for Acting Chief Strong having personally interceded on Nocerini's behalf to cause the arrest of citizen, Mark Blackwell[3] whom Ms. Nocerini had wrongfully accused of harassing/stalking her and whom Nocerini was trying to intimidate and silence.

74. Nocerini's interference was done with the objective of preventing Plaintiff from taking the position of Chief of Police over Acting Chief Strong, despite Plaintiff having earned the position according to the criteria established by the City of Wayne.

75. Nocerini's interference was motivated by her own personal gain, *i.e.*, to achieve the arrest and to intimidate a long-time critic of her personally, not for the best interest of City of Wayne.

76. As a result of Nocerini's interference, Plaintiff was not given the position of Chief of Police despite having earned the promotion, thereby adversely impacting Plaintiff's business/contractual relationship with the City of Wayne and causing him to sustain both economic and non-economic injury.

Plaintiff, Abraham Hughes, requests a judgment in his favor and against Defendant, Lisa Nocerini, in whatever amount he is found to be entitled in excess of $75,000.00, exemplary damages in whatever amount he is found to be entitled, plus interest, costs and attorney fees.

### COUNT IV – NEGLIGENCE AMOUNTING TO GROSS NEGLIGENCE
### (NOCERINI & LESLIE)

77. Plaintiff realleges and incorporates by reference, Paragraphs 1 through 76, and further alleges:

---

[3] See ¶'s 16, 17, 20 and 22, infra.

78. At all times pertinent hereto, Defendants, Nocerini and Leslie, were under a duty to avoid acting in a manner so reckless as to demonstrate a substantial lack of concern for whether injury would result, *i.e.*, gross negligence.

79. By virtue of their positions and the clear problems identified and recommendations made in the 2018 Investigation, Nocerini and Leslie were under a duty to ensure that all reasonable steps were taken to preserve the fairness, integrity and trustworthiness of the promotion process within the City of Wayne, and in particular to provide a system which was objective so as to remain free from individual interference or manipulation by Nocerini, Leslie or their successors.

80. Nocerini and/or Leslie did breach that duty in a manner amounting to a substantial lack of concern for whether injury would result to Plaintiff, as follows:

   a) Announcing an interview as part of the process then failing to conduct any interview, instead stating that the 'interview had been taking place over the prior three months;'

   b) Failing to establish objective criteria that would be free from the subjective, non-competitive and personal decision making of Nocerini and/or Leslie;

   c) Announcing an objective score-and-score-only process to determine the most qualified candidate for the position to be conducted by a third-party testing facility and then either (i) disregarding the resulting scores, or (ii) subjectively and secretly adding elements never announced as being part of the competition and therefore, elements that Plaintiff could not knowingly or meaningfully contribute to.

   d) Misreporting the actual scores obtained by the candidates as a result of the EMPCO testing process.

81. As a direct and proximate result of these breaches of duty by Nocerini and/or Leslie, Plaintiff was deprived of the benefit of his having outscored Acting Chief Strong for the position of Chief of Police, was deprived of the promotion he had rightfully

earned, suffered economic injury, suffered, mental stress, suffered emotional upset, and suffered outrage and indignity, each of which he continues to suffer.

Plaintiff, Abraham Hughes, requests a judgment in his favor and against Defendant, Lisa Nocerini and/or Alyse Leslie, in whatever amount he is found to be entitled in excess of $75,000.00, plus interest, costs and attorney fees.

## V – BREACH OF IMPLIED CONTRACT (CITY OF WAYNE)

82. Plaintiff realleges and incorporates by reference, Paragraphs 1 through 81, and further alleges:

83. Under the terms established for the promotion to Chief of Police, the highest scoring candidate in the EMPCO testing process was to become the next Chief of Police for the City of Wayne.

84. Plaintiff fully performed the terms of the agreement by participating in the testing process, and was the highest scoring candidate in the EMPCO testing process.

85. City of Wayne's appointment of an individual other than Plaintiff after the terms were established and the process performed was a breach of contract by City of Wayne.

86. As a result of the City of Wayne's breach of contract, Plaintiff has been deprived of the economic benefits which would have come with his appointment as Chief of Police.

Plaintiff, Abraham Hughes, requests a judgment in his favor and against Defendant, City of Wayne, in whatever amount he is found to be entitled in excess of $75,000.00, plus interest, costs and attorney fees.

Respectfully submitted,

/s/   *John M. Peters*
JOHN M. PETERS (P32118)
Attorney for Plaintiff
1844 Blue Grass Drive
Rochester Hills, MI 48306
(248) 601-0201 (ofc)
(248) 601-0207 ((fax)
jmp@peterslaw.com

Dated:  June 21, 2021

## JURY DEMAND

Plaintiff, Abraham Hughes, requests a trial by jury of the factual issues arising in this matter.

Respectfully submitted,

/s/   *John M. Peters*
JOHN M. PETERS (P32118)
Attorney for Plaintiff
1844 Blue Grass Drive
Rochester Hills, MI 48306
(248) 601-0201 (ofc)
(248) 601-0207 ((fax)
jmp@peterslaw.com

Dated:  June 21, 2021